It's me again, Floyd Weissner, for Plaintiff's Appellants. Your Honors, this is an appeal from a dismissal for forum nonconvenience. So it's different from the usual case, which you may see, because plaintiffs finally won one, at least initially, and then we had victory taken away from us. The court below initially found that the forum nonconvenience factors neither sufficiently were numerous or weighty to justify a forum nonconvenience dismissal. It then reversed itself. And why did it do that? It did it for one reason, because in another case, not this case, in another case in which Singapore Airline was also a defendant, Singapore Airline agreed to withdraw its Article 20 all-necessary measures defense, and the court then said, well, as a result of this development, I'm not going to try the case against Singapore Air with the case against Boeing and Goodrich, the defendants here. Now, is the district court, this goes back to something you were saying in the last argument, is it correct that once the Singapore Airlines had waived its Article 20 defense, then it now, because of these agreements, is now liable for 100 percent of whatever, at least compensatory damages. Is that right? That's true, where there's Warsaw jurisdiction. And so is it also right, then, that there really isn't going to be a trial against Boeing and Goodrich in those cases, because there's no damages left? Well, actually, you're right. The district court did some speculation, but its speculation was right. Well, that's not speculation. I mean, as to what was going to happen in Singapore, it was speculated. But what's going to happen here, if 100 percent of the damages are gone, it's gone. And there's no more. You can't get double damages. Well, that's true. And I think there were some arguments in the briefs that settlements always involve less than 100 percent of value. So if you're picking from two pockets, perhaps you can get more. There was also a question about whether emotional distress damages are recoverable under Warsaw. There were some cases that just involved emotional distress because there were walkaways from this crash, and therefore you would need Boeing and Goodrich for that. So there were possibilities for recovery of additional damages in addition to the 100 percent by Singapore Air. But as it turned out, Your Honor, those cases have been resolved, I believe, almost completely against both Singapore Air and Boeing and Goodrich. But I would also point out, Your Honor, that had the judge ---- But when you say they've been ---- well, see, this is the problem we're getting into, what happened since. Yeah. Really, the question is, was it necessary that the cases against ---- either by logic or law, was it necessary that the cases would be dropped against Boeing and Goodrich because Singapore accepted liability? And I say no. The reason why the court did it ---- Otherwise, if we're going to go beyond what happened then, we have to ask not only are they all gone, but did Boeing and Goodrich participate in the settlements? And we probably shouldn't get into any of that. And as I started to say to Judge Berzon in response to the question of that, I could engage in speculation of my own. If the district court had not denied this motion to dismiss the form of nonconvenience, we'd have settled these cases in the U.S. court, too. So we can speculate all we want about the effect of it. Well, I wasn't really asking a ---- I wasn't trying to speculate. I was trying to ask whether the fact that the airline has essentially waived a defense to damages means that it was going to ---- essentially agreeing to pay 100 percent of compensable damages, and therefore there was no way that there was any way to proceed. That's by way of speculation, but simply that you can't get double damages. Therefore, how could you have gone after Boeing and Goodrich? That's what I'm asking. Yes. And essentially you're correct except for the points that I made about a motion. Except that there were a few other people, but not the person in this case. Yes. Well, you also said that you would ---- maybe you couldn't get ---- it wouldn't matter once you got a verdict. Right. But since they might all be liable, the fact that one accepts it doesn't really matter as far as settlement is concerned. That's exactly right. And, Your Honor, the point is, is that the court was never ---- the district court below was never going to try the case against Boeing and Goodrich with the case against Singapore Air. Singapore Air ---- I mean, Boeing and Goodrich could have implemented Singapore Air in our case. Singapore Air was not a defendant. They never did. They could have. They never did. They didn't want them in the case. The court, in talking about those cases, said, well, these cases have radically different theories, and it's not a good idea in my judgment to try them together. When it came time to enlisting these cases for exemplar trials, Boeing and Goodrich objected to being tried with Singapore. So they were never going to try them together. And now what the district court has done effectively is turned it over to Singapore and said, you try them all together. Well, Your Honors, Singapore is not going to do it either. The case is just ---- The one point. That's right. But now ---- But it seems like the district court now is suggesting, well, now he did say it was unfair to try them together. And now he's saying, but it's okay for Singapore to try them together because that's where they're all going to be. Well, he said they should be resolved in a single action in Singapore. Right. But they're not going to be resolved in a single action in Singapore, Your Honor. The cases that have been filed in Singapore just against Singapore Air have not even been consolidated. They don't have our MDL procedures. They're not even consolidated in that way. They're not going to consolidate any case against Boeing and Goodrich with a case against Singapore Air. And further, Singapore Air could do the same thing that Singapore did here. It could withdraw its Article 20 defense, admit liability, then you'd have a separate trial anyhow. But it's not going to be. What really happened here, Your Honor, is that the district court ---- I'm not sure where any of this gets you. Well ---- I mean, this is an exercise of discretion. It is. Even if you put aside all these considerations about trying together or not trying together, you've got witnesses. Most of the witnesses are many miles away from Los Angeles, San Francisco, where we filed the case here in California. The district court has no power to compel attendance of many of the witnesses. Why is this a kind of plain, straightforward abuse of discretion standard analysis where we say, no, I mean, this makes perfect sense. It might have been okay if the district court had exercised its discretion another way. That might have also not been an abuse. But how could this possibly be an abuse of discretion for the district court to say this case, where the accident didn't happen here, where most of the witnesses are not here, where most of the plaintiffs or all of the plaintiffs are not U.S. citizens? We don't want to burden our courts, our jurors with filing this case. Right. Why is this so simple? A couple of big factors, Your Honor. A couple of big factors. I think the motion to reconsider is very important here. I think that's what makes it different. I think that if this ---- if the district court had ruled initially that the case was I'm sorry, if the district court had ruled initially that this case must have been uhhh wronged, I think it was supposed to result in to a case, a search off a road, a hold. I don't see why. I mean, basically he's, he I gather he thought it was a pretty close case, and once ね No, Your Honor, I think the reason he made it all the difference, he thought it was a close case, but he ruled in our favor. What changed his mind was the fact that the Americans were out of the case, that the Americans no longer, he thought, would be in the case against Boeing and Goodrich and now it would just be foreigners. Well, why isn't that relevant? And why isn't that relevant? I think that is. I think that is. My understanding, I'm sorry. I'm sorry. Under the case law is that, in fact, there is less foreign preference with regard to non-Americans. But not no difference. Yes. Not no, but that's the difference. True. It's incremental. So that's one incremental difference. Another incremental difference is that there was not going to be a trial now when he thought there was going to be trials. But he's got all the factors initially, at least as it comes out due to the balancing wing, in our favor. Now he's got one factor that changes. The Americans are gone. You've just got these foreigners.  At least true. Excuse me? At least true. What's the other one, Your Honor? That there's not going to be a trial on the subject at all by anybody. Okay. Okay. And that changes the balance. It doesn't mean that those are the only things that matter. It just means that that changes the balance. You still have the fact that the Cubs are away in the prior decision, but now the balance changes. Right. But I don't want to lose sight of your question on that one, too, Your Honor. That's about the private interest factors, because that's a real red herring here. Because you mentioned these witnesses in Taiwan and Singapore. And a couple of points in response to that, please, Judge. First one is that Boeing and Goodrich don't need those witnesses at all. This case is not about what caused the crash. We agree Singapore Air caused the crash. But my people lived through that crash. They would have lived had it not been for Boeing and Goodrich and their defective products, with the emergency slides not deflating, with one emergency slide actually inflating inside the cabin, blocking people in their seats so they burned to death or died of smoke inhalation. No PA system. No emergency floor lighting. My role is there's only one plaintiff left now. There is one case, the Van Schendel case. But I think there are more plaintiffs in that case, Your Honor. I'd have to check on that. Well, go ahead. And that could matter. That was my understanding. I think there's several in that case as against Boeing and Goodrich. But my point, Judge, is that they don't need those documents. This case is about their design. I think these are very fine arguments that you should have made and apparently did make to the district court. But district court exercised discretion. And you have very good reasons why it might have exercised discretion differently. In fact, it did exercise discretion differently until some other factors tipped the balance. Okay. Why aren't we exactly in the middle of abuse of discretion land? Well, we are. And that's a very wide country. It's a big country. We are. Abuse of discretion. We are. Even though it's a motion to reconsider, it's still abuse of discretion. I acknowledge that. But I'm saying the judge did abuse of discretion here because, Judge, all these factors we just talked about with the private interest factors, ease of access, the source of proof and witnesses, that I say are not even relevant to the case. They don't even need because it's not. And by the way, Judge, a lot of these documents and witnesses they talk about, they're in Taiwan. They're not in Singapore. They can't get them from Taiwan either. So how is it even better to be in Singapore than California? There certainly are a bunch of important witnesses, and those are people who have to testify about the post-crash situation, which would include passengers and crew people and people on the ground at that point, about how fast did it blow up, would there have been time to get out, and so on. Some of that is going to be involved in the investigations. There was an investigation in Singapore, as I recall. But under Dole Foods, Your Honor, the court mentioned that if it's not any easier to get it in the proposed alternative form than to get it in the United States, that's not a factor. And my point is that the very people you talked about ---- It's a lot closer, if nothing else. Sorry, Judge? It's a lot closer. I've flown from L.A. to Taipei. I've also flown from Taipei to Bangkok. And I tell you, one is so much shorter than the other. I agree with you. I've made that flight, too. But it doesn't matter ---- That's right. But even so, Judge, it's not a matter of how far it is. It's a matter of the rules of law. If you can't get the documents because Taiwan doesn't recognize the Hague Convention and letters of rogatory, you're not going to get them. It's just going to be just as hard to get those documents. Well, let's say the witnesses are willing to show up. Well, that's another matter. Without being forced, it's certainly a lot less of a burden having them come to Singapore than it is having them come to Los Angeles. You're right about that. But I haven't seen any crew. Where are the passenger witnesses or the crew people? I mean, a lot of this is were these people alive at the time and what happened that prevented them from getting out? Who are those witnesses? We represent most of the crew, and most of them lived. Where are they? Some of them live in the United States now. Some of them live in Singapore. But they would testify anywhere. We control them. So they would come anywhere. It's a matter of the witnesses that are in Taiwan. There's been no showing that those witnesses are, as the judge suggests, perhaps willing to come to Singapore. There's been no suggestion that they are. As far as I know, they're not. I think I'm out of here. So you could bring suit in Taipei, right? We could bring suit in Taipei. I'm not sure we could bring suit against Singapore in Taipei. We could bring suit probably against Boeing and Goodrich in Taipei. There's a lot of problems with doing that, problems that do not rise to the level of an inadequacy of a form, but problems. And I get back to, Judge, the courts in the United States aren't closed to foreigners. And what happened here is the district court judge decided that on that one basis, that the Americans are out and now it's time to clear my docket. That's basically what happened. And the way to do it is to get rid of these foreigners. And let's pass this off to the Singapore courts now. But that's not the law, Judge. I mean, this is something that imposes a fair burden on our court system. If you go to trial, you're going to have jurors, people, men and women of the community being forced on pain of imprisonment to show up and attend the trial. It might take weeks. Sure. It costs for marshals. It costs for courtrooms. It costs for the district judge's own time and law clerks and so on. Why is that? Because they say, look, if we're dealing with the rights of U.S. citizens, we will spend the time because, you know, it's our own. But since we're dealing with the rights of foreigners, it's just not so important. You know why, Judge? Because it's not something that we want to finance. You know why, Judge? Because we're not just dealing with the rights of plaintiffs. We're dealing with the obligation of the defendants. And they're Americans. They're American corporate defendants. They don't want to be here. And there's a reason why they don't want to be here. It's a whole value judgment. It's the same reason I want to be here. You know, that's — it's both sides of it. But my point is, Judge, is that if there's a public interest that was involved in the first place for the Americans, that public interest remains the same. That public interest is holding American corporate defendants responsible for their negligent and defective products. Now, that interest is always there, whether you're talking about — I thought it was protecting American interests by — Well, that's another one. But don't you — but wouldn't the Court agree that we have an obligation to regulate the conduct of our corporate citizens, too? That's another public interest, in my view. And that public interest was there all the time. Not everybody thinks that. I know. We ought to regulate corporate — That's why I'm usually on this end, Judge. We'll find out. We send Martha to jail. That's not — Good. We're going to hear from Mr. Girard next, who's very good at telling you why that's not all true. Okay. Thank you, Judge. This Court has no more questions. Thank you. Please, the Court. I'm Keith Girard for the Appellant Boeing. And I'm also — I'm speaking on behalf of BF Goodrich. Mr. Collier is here, but he's given me his five minutes. You're not going to spend it, are you? I'm sorry, sir? You're not going to spend it, are you? I'm very tempted to sit down. I could answer some questions. All right. We'll start with some questions. Judge Kaczynski was very concerned we're going to send American jurors to jail if they don't show up for this trial. And there's tremendous burden on the American legal system if we try lawsuits. Didn't the judge say in this case that he thought it very unlikely there'd ever be a trial against Boeing? Once they — against Boeing? Yeah. Once they waived the Article 20? So what was the burden, then, of leaving the case here if it wasn't going to trial? Well — What's the tremendous burden on jurors? The judge said it's never going to go to trial. All that'll happen will be that either it'll settle — I think my friend here would say there will be a trial. Well, I'm not going to — no, he's not — he's your friend. He's not my friend. The — it's the district judge — But in Canada recently, Judge, they referred to other lawyers as friends. Yeah, it's the district judge that was trying to see, you know, if he abused his discretion. That doesn't mean we have no role. It means we look at his decision and we see if it's a sensible decision. And in this decision, he said, one, that it'd be unfair to try the cases together. That's unfair to poor Boeing if they get tried with Singapore. Then he said, let's send them overseas so they can be tried in a single case. I agree. I don't understand that. I don't understand that. I think it's unfair. Then he said that trying the cases would be a great drain on our resources. And it would be. Right. And then he said, but if this proceeds, there's never going to be a trial. And I think — He said that also, didn't he? I think he's probably right. But we're here because — So how can it be a great drain on our resources if there isn't going to be a trial? There isn't a trial, Your Honor. You're absolutely right. There will be no drain on our resources. But this whole decision is full of inconsistencies for the district court. And on a second — the part that most influences me, actually, or which I'm most concerned about is he seemed, at the time of the first decision, to understand the theory — the plaintiff's theory of the case. But by the second time, he didn't seem — he characterized the theory as being crashworthiness and made a great deal of fun of it. It strikes me that what I understand the actual theory to be is really quite different from the relationship between the products liability case and the case against Vicaria in cases like Piper and Lua, because it's sequential. And it's not a question of the cause of the crash in any sense, either in terms of crashworthiness or the cause of why it happened to begin with. But it is, Your Honor, and I can explain how. I mean, you have an airplane that's going down at 130 knots when it hits all of this earth-moving equipment, and it begins to come apart. Now, plaintiffs suggest things didn't work, like the loudspeakers, the lights on the floor, the slides didn't work. All of what happened during the crash can impact those things, and probably did, as a matter of fact. He suggested it's a red herring to want to go to Singapore. All of the records of maintenance of those items — for example, slides have to be repacked periodically — all of the evidence on that is in Singapore with Singapore employees. He mentioned that he thought some of the cabin crew lived in the United States. They don't. It's in the record. The 12 of the 14 of the cabin crew are still in Singapore. Two of them live in Taiwan. Are they all clients of your opponent? I don't know whether they are anymore. I think they were at one time clients of Mr. Nolan's firm. But do you disagree that — And that is how many cases are there. The only case against Boeing is the Van Schendel case. There are several Van Schendels. I mean, there were children, but — There's one case, essentially. One case, yes. One family. There are no other — One decedent. One Dutch family. But at the time the decision was made — By the way, they're suing — the Van Schendels are suing Singapore Airlines and Singapore. There is a case pending against — And one nationality or the other? I'm sorry, Your Honor? At the time this appeal occurred. Judge Consensi asked me a question. Nationality or the other? The Dutch, I believe, from the Netherlands. At the time this appeal was taken, what we're looking at is the judge's decision. There were a whole group of plaintiffs, right? That's right. I believe there were 49. And some got discouraged or settled their cases since. I believe they've — I believe they've all settled. It's nothing that I've had anything to do with. They've settled, right? They've settled. Mr. Nolan — pardon me. Floyd Weisner can answer that. I can't. We were not involved. Do you think that should be something we take into account? I think what we ought to do is what's practical. There's one case left. It is pending in Singapore right now. Do you want to do what's practical? Do you want to go out in the hall and settle it? Do you want to have help from our mediators to settle it? The man to ask — I don't know whether he's still in the courtroom or not, but the man to ask that question to was Mr. Margo. He's in charge of that. Is he here? He was, Your Honor. He's over your shoulder over there. He might want to come to the hall with me. Did he bring a checkbook? I don't know. I hope so. Is there any interest in mediation? We do have — did Bersan mention the mediation services? Your Honor, I don't think that the Boeing Company or BF Goodrich really had anything to do with this accident. That doesn't matter. Well, I mean — I don't have much more to say other than what I've said so far. Again, I can answer any other questions you might have. Do you have any other questions? I mean, whether they had anything to do with the mob, I assume you're getting paid for this. I am, Your Honor? Yes. Yes, I'll be paid for it. Okay. So one way or the other, whether they had anything to do with accidents or not, they are not getting away without paying something. We have produced about 30,000 documents in the cases that we're pending in California. What I'm trying to point out to you is that not being involved in an accident doesn't mean they don't pay anything. That's absolutely right. Okay. So given that they are on the hook for something and that provides a base of settlement, whether or not they have any involvement in the accident at all. Your Honor, I've — I mean, many people have said — I mean, you've heard of cases cuddling where the body claimed not to have any involvement in the accident. We try not to do that. Has that happened before? But I've settled hundreds, and I've been representing manufacturers in major airline disasters for 30 years. I've settled hundreds and hundreds of cases. This is one — I'd like to refer for one more. This is one I should not settle. I do have another question, which is in terms of the paradigm cases which you're relying on — Yes. — basically Piper and Lewick in particular. And Luck, yes. And which, I'm sorry? Luck, right. Luck. Okay. Were cases in which it was very obvious what the sort of forum with gravitas was, where everyone or most of the relevant people, evidence, and so on were. But the problem here is that that isn't true. I mean, does forum nonconvenience partake at all of comparative convenience? I mean, the fact is that there isn't a Scotland, as there was in Piper, or a New Zealand, as there was in Luck. Here, any forum is going to be inconvenient in many ways. Right. In Luck, there were residents of, I think, six or seven different countries on that relatively small aircraft. Right. And the crash was in Taiwan, and the company is in Singapore, and Boeing is here. But look. So I'm wondering why we would go transferring it to someplace else that's also inconvenient in many ways. Singapore makes sense as a forum. To me, as an aviation lawyer, Singapore— It's not where anything happened, and it's not where the passengers are. Well, it's where the crew was trained. You're right. I mean, it would be nice to have Singapore and Taiwan lumped into one place. Then we'd have it all together. But we can't do that. But isn't the fact that there's not a critical difference between this case on the one hand and Piper and Luck on the other? Piper, the jurisdictions involved in Piper were Ohio for Hartzell Propeller, Pennsylvania for the Piper aircraft, Scotland for the operators, and I believe— Operators, the plane just—the crash? It crashed in Scotland. The crash was there. The plane just went there. The operators were there. I think that's right. In Luck, Luck's a harder case. They were Americans on Luck. There were residents of a number of countries on that aircraft in New Zealand. And there were questions about the design, the manufacture of the aircraft in Canada. Was it to have on an airplane? But the Court, and I think the Court was correct, the circuit upheld it, said that case ought to be tried in New Zealand. And there's some very good language in there that is very apposite in this case about that's where the comparative negligence of the parties would be determined, that's where the effect of the maintenance of the aircraft would be relevant. That's all of those facts. They're not red herrings, as Mr. Wisner suggests. If we defend a case in Singapore, we're going to be looking to hopefully be able to get discovery from the airline on subjects like that. When was this? Just take slides. When were the slides last packed? Who packed them? How well were they packed? Kagan. I'm not going to be able to get discovery from Singapore Airlines here about that. We did not do discovery against them. But could you? Could we have during the, while we were together? We could have. The discovery, the plane. Singapore is not subject to process here in the United States. Getting their witnesses here is something else. I'm sure they're, what he's suggesting is we should have. If you ask Singapore to bring a witness to testify about one of their employees about X, they don't have to do that? That was over and over again. They asked for the pilots here. Just get the pilots. What Mr. Wisner is suggesting is that we ought to implead Singapore so we can do discovery against them. Somehow or other, that doesn't sound right. I mean, if we have an absolute cause of action against them, that's one thing. But to bring them in for the purposes of discovery, I don't, just doesn't sound right to me. It doesn't really sound like a terrible practical problem for you about getting the discovery from Singapore. You're going to have to do that whether the suits in Singapore are here. Getting witnesses is something else. Well, Singapore is here in suits anyway, aren't they? Here in what? Their defendant in suits in Los Angeles. Well, they've settled them all. They're all settled now? Mr. Barlow can tell us. Yes. Only poor Mr. Van Schindel is the only one left in this whole air crash? That's correct, Your Honor. Here in. And that's the case you think shouldn't be settled? That's the case that the circuit, the trial court transferred to. No, no. But we talked about settling this case and you said you've been practicing 30 years and this is one case that shouldn't be settled. Something bad about Mr. Van Schindel? No, Your Honor. There's something about the fact that really there is no evidence that we've done anything that. I mean, if you're asking my reason for not wanting to settle it, that's the reason. You didn't settle any other cases? No. Out of this? No. Not one cent. As Judge Kaczynski pointed out, it cost us something. I see. And it cost a lot. And as I said, we produced 30,000 documents. But you just don't want to encourage people to sue you in what are essentially, in my judgment, and I should perhaps not be saying this, what essentially are frivolous cases. Do you want them to sue you in Singapore? I don't want to proceed anywhere. And I think that it will go away. In fact, I will tell the Court it will go away because they had 60 days in the judge's order in which to file in Singapore. They haven't done it. They have no intention of proceeding in Singapore or anywhere else against the bar company. This is the land of milk and honey. If they were able to keep us here. You're saying this is the land where we treat plaintiffs fairly, the United States. We might have that discussion in private sometime. I'm perhaps I'm jaded. No, you're doing a good job. That's your profession, to represent defendants. You do it very well. Thank you, Your Honor. Are there any other questions from the Court? Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. The only thing I would say, Your Honor, is that I would welcome the attempt to mediate with Mr. Girard. We had mediated through the court's mediation system with Singapore Airlines only, and actually we came close on the Van Schendel case. A little bit of money from Mr. Girard's clients might make all the difference. I'd welcome that opportunity. We've settled a lot of cases with him where he's told me, there's no way, Floyd, there's no liability. I'm not paying you a dime. And he's paid something because he's a good man. He can see what happens. So this case could be settled, too. Well, we are not going to order people to mediate. It might be advisable for the parties to do it, but it's up to you all. We'll wait for a week or two to hear. Why don't you all go to lunch? It's about 1 o'clock. We have some very fine restaurants here in Pasadena. I recommend the Parkway Grill. It's a very fine place. Why don't you all go to lunch? You've had a nice day in court. And if the public sentiment comes up, that includes Mr. Margot, too. I'd be happy to buy him lunch if that will do it. You know, it's a start. Why don't you take Mr. Margot, too? Why don't you all go? Call over to the Parkway Grill. It's a very fine place. And over a nice meal, who knows what will pop up? I would guarantee that a reversal would settle this case. That's the one thing I do know. Thank you very much, Your Honor. Thank you. Let us know in a day or so. If something happens at lunch, you just let us know and we can make a submission. Thank you. Thank you all very much. The case is submitted. The Court will stand in recess for the day. All rise.
judges: Reinhardt, Kozinski, Berzon